IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| ADONIA K. SMITH, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| | ) |
|         v. | )   Case No. 1:15cv956 (JCC/TCB) |
| | ) |
| | ) |
| LOUDOUN COUNTY PUBLIC SCHOOLS, | ) |
| | ) |
|     Defendant. | ) |

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Plaintiff's Motion for Attorney Fees and Costs [Dkt. 129]. For the reasons that follow, the Court will grant the Motion in part and award Plaintiff $44,986.88 in fees with $3,131.82 in costs to Coffield PLC, and $46,333.08 in fees with $7,346.00 in costs to Swick & Shapiro, PC.

### I. Background

A detailed description of the facts of this case may be found in the Court's earlier Memorandum Opinion [Dkt. 59] on Defendant's Motion for Summary Judgment. As such, the Court repeats here only what is relevant to its ruling on the instant Motion.

Plaintiff Adonia K. Smith is a deaf individual who, from August of 2007 to June of 2010, served as a special

education teacher employed by Defendant Loudoun County School Board.  During her tenure, Plaintiff became embroiled in disputes with the school's administration regarding the accommodations provided for her disability.  On July 28, 2015, Plaintiff filed suit against Defendant under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, contending that (1) Defendant failed to reasonably accommodate her disability during her employment; (2) Defendant discharged her in retaliation for requesting accommodations; and (3) Defendant discharged her for discriminatory reasons.

After the close of discovery, Defendant moved for summary judgment.  In a Memorandum Opinion [Dkt. 59], the Court granted Defendant's Motion as to Plaintiff's retaliatory and wrongful discharge claims, but denied it as to Plaintiff's failure to accommodate claim.  The latter claim was tried over the course of five days, resulting in a hung jury.  Shortly thereafter, Plaintiff discharged her attorneys from the firm of Swick & Shapiro.  Plaintiff then secured alternative counsel, Timothy Coffield, who tried Plaintiff's failure to accommodate claim to a second jury.  This time, the jury returned a verdict in Plaintiff's favor, awarding $310.00 – an amount representing the sum total of Plaintiff's medical bills.  Plaintiff has since appealed the Court's ruling with respect to her retaliatory and wrongful discharge claims.

Plaintiff now moves for an award of attorney's fees and costs in the following amounts: $44,986.88 in fees and $3,143.06 in costs for Coffield PLC; $208,498.88 in fees and $7,346.00 in costs for Swick & Shapiro PC; and $8,400.00 in fees for an attorney who assisted Plaintiff at the administrative stage of these proceedings before the EEOC.

## II. Legal Standard

Under the ADA, "the court . . . in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205.

The Fourth Circuit has set out a three-step process for determining a reasonable attorney's fee. First, the Court should "'determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.'" *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir.2013) (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir.2009)). In determining what is reasonable, the Court should apply the twelve factors enumerated in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974). *McAfee*, 738 F.3d at 88. Those factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's

3

> expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). Generally, "[t]he Court need not address all twelve . . . factors independently" as they are "subsumed" into the initial evaluation of what constitutes a reasonable rate and number of hours expended. *Wells Fargo Bank, Nat. Ass'n v. Walls*, No. 1:12-CV-664 LMB/IDD, 2013 WL 869902, at *2 (E.D. Va. Mar. 4, 2013), *aff'd sub nom. Wells Fargo Bank, N.A. v. Walls*, 543 F. App'x 350 (4th Cir. 2013).

After making this initial determination, the Court must subtract fees for time spent on unsuccessful claims. *McAfee*, 738 F.3d at 88. Finally, the Court should award a percentage of the remaining amount depending on the extent of the Plaintiff's success. *Id*.

### III. Analysis

Defendant first contends that Plaintiff's Motion should be denied without "detailed analysis," as the amount sought "shocks the conscience." Opp. [Dkt. 132] at 4. The

4

Court declines to reject Plaintiff's claimed fees out of hand. Given the substantial briefing and two jury trials required to bring these proceedings to a close, the Court is unsurprised that the claimed amounts are significant.

Defendant next argues that Plaintiff is not entitled to attorney's fees in light of her limited success in this litigation. Plaintiff's Amended Complaint [Dkt. 6-1] sought $300,000.00 in compensatory damages, back pay and benefits, reinstatement in her position, and injunctive relief forbidding Defendant from further discrimination against her. As noted above, Plaintiff's recovery was ultimately limited to $310.00 – the total amount reflected in medical bills she allegedly incurred due to Defendant's conduct.

"A prevailing plaintiff in an ADA action is generally entitled to recover fees paid to an attorney unless special circumstances render such an award unjust." *Feldman v. Pro Football, Inc.*, 806 F. Supp. 2d 845, 847 (D. Md. 2011). "'Plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship

between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id*. at 111-12. "That standard is satisfied by a 'judgment for damages in any amount, whether compensatory or nominal.'" *Mercer v. Duke Univ.*, 401 F.3d 199, 203 (4th Cir. 2005) (quoting *Farrar*, 506 U.S. at 113).

Notwithstanding the above, "plaintiffs recovering only nominal damages usually or often will not be entitled to an award of attorney's fees." *Id.* at 203. In determining whether a fee award is appropriate on nominal damages, courts consider "'the extent of relief, the significance of the legal issue on which the plaintiff prevailed, and the public purpose served'" by the litigation. *Id*. at 204 (quoting *Farrar*, 506 U.S. at 122 (O'Connor, J., concurring)).

As Plaintiff received a favorable jury verdict on one of her claims and a corresponding award of damages, it is clear that she is a "prevailing party" for purposes of 42 U.S.C. § 12205. *See Mercer*, 401 F.3d at 203. Defendant nonetheless claims that Plaintiff is not entitled to attorney's fees because the amount she recovered is so small as to be "nominal." In support of this contention Defendant cites Black's Law Dictionary, the current edition of which defines "nominal damages" as "[a] trifling sum awarded when a legal injury is

suffered but there is no substantial loss or injury to be compensated." DAMAGES, Black's Law Dictionary (10th ed. 2014).

Here, however, the jury *did* find that Plaintiff suffered a compensable injury. The amount awarded, while small, constituted 100% of the compensatory damages Plaintiff could prove with documentary evidence. "By their very nature, compensatory damages are not nominal." *Coles v. Deltaville Boatyard, LLC*, No. 3:10CV491-DWD, 2011 WL 6337619, at *4 (E.D. Va. Dec. 19, 2011). An award of nominal damages justifies the denial of attorney's fees because it signifies "failure to prove an essential element of [a] claim for monetary relief." *Farrar*, 506 U.S. at 115. The award of a small amount of compensatory damages, on the other hand, does not so signify. *See McAfee*, 738 F.3d at 88 n.6 (noting the difference between nominal damages and a small award of compensatory damages for purposes of awarding attorney's fees). Accordingly, the relatively small award here does not justify the outright denial of attorney's fees. The Court therefore proceeds to calculate the lodestar figure for Plaintiff's attorneys.

According to his time logs, Plaintiff's attorney Timothy Coffield spent 175.389 hours on this litigation. Defendant quibbles with minor aspects of his billing, but ultimately points to no time improperly billed. Having reviewed Mr. Coffield's time records, the Court finds that 175.389 is a

7

reasonable number of hours to have expended on this litigation. Mr. Coffield entered his appearance in this case two months before the start of trial. In the short time that followed, he familiarized himself with a voluminous record, prepared his case, and tried Plaintiff's remaining claim over the course of four days. This was a substantial undertaking, and one which Mr. Coffield executed with diligence and efficiency.

Mr. Coffield submits an hourly billing rate of $350.00, reduced to $200.00 per hour for travel. Defendant does not meaningfully contest this rate, and the Court finds that it is reasonable. It is substantially below the $421.00 set by the Legal Services Index (LSI) Laffey Matrix[1] for attorneys of Mr. Coffield's experience and is adequately supported by the Declaration of Nicholas Woodfield [Dkt. 129-6]. Moreover, this rate is plainly warranted under the *Johnson* factors. Plaintiff's claim was at least moderately novel and complex; as Mr. Coffield points out, it presented a question not squarely addressed by existing case law. Mr. Coffield demonstrated

---

[1] "The Laffey Matrix is used as a guideline for reasonable attorneys' fees in the Washington/Baltimore area." *Galvez v. Am. Servs. Corp.*, No. 1:11cv1351 (JCC/TCB), 2012 WL 2522814, at *5 n.6 (E.D. Va. June 29, 2012). The Court notes that there are two formulations of the Laffey Matrix: the LSI model and the more conservative U.S. Attorney's Office model. *See Salazar v. D.C.*, 991 F. Supp. 2d 39, 47 (D.D.C. 2014). Mr. Coffield cites to the LSI model, which several judges have found to more accurately reflect the cost of legal services in this region. *See id.* at 47-48.

admirable skill in mastering both the law and the case's substantial record in a very short time. Moreover, Mr. Coffield agreed to take what was a relatively unattractive case, as demonstrated by Plaintiff's difficulty in securing alternative counsel. As a solo practitioner, Mr. Coffield incurred substantial opportunity costs by doing so.[2] The Court notes as well that, had Mr. Coffield not taken on the case, Plaintiff intended to try the case herself. His appearance therefore served to streamline these proceedings considerably.

Multiplying 166.03 hours by Mr. Coffield's hourly rate of $350, and adding to that 9.36 hours of travel at a rate of $200 per hour, results in an amount of $59,982.50 ($58,110.50 + $1,872).

Moving on to the second step of the analysis, Mr. Coffield billed no time on unsuccessful claims; he entered this case when only Plaintiff's single successful claim remained. As such, there is no time to deduct from the total above.

Finally, the Court turns to what fee adjustment is warranted in light of Plaintiff's relatively low recovery. The Court notes that, when Mr. Coffield entered this case, the

---

[2] Defendant suggests that it doubts Mr. Coffield incurred substantial opportunity costs because Defendant's counsel defended several other cases during the pendency of this action. Defendant's counsel, however, is a partner at a law firm with numerous other attorneys and, the Court assumes, a support staff. Mr. Coffield is a solo practitioner who must handle every aspect of every case personally.

relief Plaintiff sought had narrowed considerably. The only relief available to her at trial was compensatory damages for emotional distress. While the amount the jury ultimately awarded Plaintiff was small, it constituted 100% of her documented damages stemming from emotional distress. It is clear that Plaintiff would have liked to recover more, but a relatively small award was always a likely and – as Plaintiff notes, *see* Mem. in Supp. of Mot. [Dkt. 129] at 14 – half-expected result at the point Mr. Coffield entered this case.

The Court notes as well that the value of a judgment in a civil rights case is not measured solely in terms of the Plaintiff's recovery. Fees are regularly awarded in such cases that reflect not only what an attorney accomplished for his or her client, but for the broader public. For example, in *Marsal v. East Carolina University*, No. 4:09-CV-126-FL, 2012 WL 3283435 (E.D.N.C. Aug. 10, 2012), the plaintiff – a college professor – filed suit claiming that she had been denied tenure and terminated for discriminatory reasons. A jury returned a verdict partially in her favor, but awarded no damages or injunctive relief. *See id*. at *1. The court, in light of the "plaintiff[']s limited success, . . . the general proportionality considerations . . . regarding the public purpose advanced by the litigation, [and] the novelty of the claims," awarded a fee of $50,205.98 – a figure reflecting a

10

downward departure of fifty percent from the actual accrued fees. On the other hand, in *Layman Lessons, Inc. v. City of Millersville, Tenn.*, 550 F. Supp. 2d 754, 765 (M.D. Tenn. 2008), the court found that no reduction was warranted, notwithstanding the failure of the Plaintiff to obtain monetary and injunctive relief, given that the plaintiff's primary goal had been simply to vindicate its rights.

The facts of this case fall somewhere in between *Marsal* and *Layman Lessons*. The public purpose served by this litigation was significant. While perhaps not groundbreaking, the verdict in this case represents – so far as the Court can tell – a high water mark with respect to the accommodations the ADA requires schools to provide deaf teachers. As Plaintiff points out, no case before has required that an employer make available an interpreter on a daily basis for a deaf employee's unscheduled interactions. The result achieved in this case may therefore inure to the benefit of the deaf community. The Court notes further that, at trial, Defendant contended that this case arose from Plaintiff's quest to vindicate her beliefs regarding the importance of American Sign Language. The verdict in this case may therefore be seen, at least in part, as a vindication of those beliefs.

On the other hand, the amount Plaintiff ultimately recovered was small. "Although a substantial disproportionality

11

between a fee award and a verdict, standing alone, may not justify a reduction in attorney's fees, a lack of litigation success will." *McAfee*, 738 F.3d at 94.  After Mr. Coffield entered his appearance, Plaintiff established Defendant's liability on the claim that she brought to trial and recovered all of her documented damages.  She did not, however, convince the jury to award additional damages for intangible pain and suffering.  It is clear that Plaintiff pinned her hopes of a more substantial recovery on doing so.  As such, it is clear that the measure of her success at trial was not complete.

In light of the foregoing, the Court finds that Plaintiff's suggested reduction for lack of litigation success of 25% is reasonable.  The Court will therefore award Coffield PLC $44,986.88 in attorney's fees.

Moving on to Plaintiff's former attorneys from Swick & Shapiro, P.C., Mr. Swick claims attorney fees in the amount of $118,248, consisting of 227.4 hours at a rate of $520 per hour. Ms. Renaud claims fees totaling $159,750.50, consisting of 351.1 hours at a rate of $455 per hour.[3]

---

[3] The Court notes that it may award fees to these attorneys, notwithstanding the fact that they were discharged prior to Plaintiff's victory at trial.  "Serving as counsel of record at trial is not a prerequisite to the recovery of fees. The issue, simply, is whether services were performed which contributed to claimant's success in the lawsuit." *Mammano v. Pittston Co.*, 792 F.2d 1242, 1245 (4th Cir. 1986).

It is difficult to determine the reasonableness of these amounts. The proposed hourly rates are consistent with the conservative USAO Laffey Matrix and with the rates permitted in other similar cases. These rates are further supported by the skill of the attorneys in question, who took on a complex and relatively unattractive case, complicated further by their client's disability. The hours billed, however, do not appear to fully account for the claims Plaintiff brought and lost or the remedies she sought and failed to obtain. The Court therefore progresses to the second stage of the analysis.

As discussed above, Plaintiff originally brought claims for retaliatory discharge, wrongful discharge, and failure to accommodate her disability. The Court granted summary judgment against Plaintiff on the former two claims. Plaintiff's Amended Complaint [Dkt. 6-1] sought $300,000.00 in compensatory damages, back pay and benefits, reinstatement in her position, and injunctive relief forbidding Defendant from further discrimination against her. The Court's rulings narrowed Plaintiff's available relief to compensatory damages for emotional distress. In short, what began as fairly broad litigation was winnowed down to a single claim for a single form of relief after the close of discovery. Plaintiff may only recover fees for work related to that solitary successful claim. *McAfee*, 738 F.3d at 88.

13

The time sheets submitted by Ms. Renaud and Mr. Swick account for "lost claim time" by deducting seemingly arbitrary amounts from the various time entries. Mr. Swick and Ms. Renaud have submitted no explanation as to their reasoning, and the methodology behind their approach is opaque. For example, it is not clear why Mr. Swick deducted the same amount of time – a half hour – from the time billed for the depositions of Ellen McGraw, Michelle Kovach, and Mary Kearney when those depositions varied in length from 2.2 hours to 4.5 hours. The number of hours deducted also appears unduly conservative. Notwithstanding the fact that two-thirds of the original claims and all but one of the available remedies were pared away, Mr. Swick and Ms. Renaud never deduct more than half of the time spent on a given task, and usually substantially less than that.

The Court recognizes that attorney's fees need not be reduced for time spent developing a "common core of facts" shared by successful and unsuccessful claims. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). To some extent, there exists such a common core in this case. At the same time, claims for retaliatory discharge and wrongful termination require a plaintiff to prove very different facts than a failure to accommodate claim.

Ultimately, Mr. Swick deducts only 28.9 out of 268.48 hours (10.8%) and Ms. Renaud 108 out of 483.8 hours (22.3%) for

14

time spent on unsuccessful claims. Neither deducts time spent on other unsuccessful endeavors that did not contribute to Mr. Coffield's eventual success in the second trial, such as the failed settlement negotiations that would eventually prompt Plaintiff to discharge Mr. Swick and Ms. Renaud. The Court notes as well that some the entries are vague and include block billing. Having reviewed the time sheets submitted by Mr. Swick and Ms. Renaud, as well as the record in this case, the Court finds it appropriate to reduce the compensable hours billed by those attorneys by half. The Court therefore finds at the second step in the fee analysis that Mr. Swick should be credited with having accrued $59,124 in fees, consisting of 113.7 hours at a rate of $520, and Ms. Renaud should be credited with having accrued $79,875.25 in fees, consisting of 175.55 hours at a rate of $455 per hour.

With respect to the third step in the fee analysis, Mr. Swick and Ms. Renaud are differently situated relative to Mr. Coffield. On the one hand, Mr. Coffield relied upon their work to obtain a verdict in Plaintiff's favor. Had Mr. Swick and Ms. Renaud not spent a significant amount of time developing this case, their client would not have succeeded at all.

On the other, Mr. Swick and Ms. Renaud were not Plaintiff's attorneys when she succeeded. Indeed, they did not achieve any significant success for Plaintiff with the exception

15

of staving off summary judgment on a single claim.  During the time Mr. Swick and Ms. Renaud were Plaintiff's attorneys, the Court granted summary judgment against Plaintiff on most issues in the case, and the trial on the only remaining issue resulted in a hung jury.  Plaintiff then refused to settle the case and discharged Mr. Swick and Ms. Renaud.  Had Mr. Coffield not entered the case, it seems quite likely that neither they, nor their client, would have recovered anything in this litigation.

In short, Mr. Swick and Ms. Renaud were instrumental to, but did not directly obtain, their client's eventual jury verdict.  As discussed above, that verdict has substantial value but is still small – particularly as compared to what was sought during the time that Mr. Swick and Ms. Renaud represented Plaintiff.  In light of the foregoing, a substantial reduction for "lack of litigation success," *McAfee*, 738 F.3d at 94, is warranted in calculating Mr. Swick and Ms. Renaud's fees.  The Court will therefore further reduce the fee award to both Mr. Swick and Ms. Renaud by two thirds.  Accordingly, the Court finds that Mr. Swick is entitled to fees totaling $19,708.00 and Ms. Renaud is entitled to fees totaling $26,625.08.

Finally, Plaintiff seeks reimbursement for $8,400.00 in attorney's fees paid to Jill Sege, an "administrative attorney" who assisted Plaintiff with her claim before the EEOC.  There is scant information regarding the services Ms. Sege

16

provided in Plaintiff's Motion. Indeed, Defendant represents that this is the first it has heard of Ms. Sege. Ms. Sege never entered an appearance in this case, and is licensed to practice only in Maryland. The Court has little basis to determine the reasonableness of her hourly rate or the number of hours she devoted to Plaintiff's claim. It is unclear how much of her work related to Plaintiff's successful claim and how much to other legal theories later rejected by this Court. Finally, the Court notes that the time sheet submitted by Ms. Sege appears to reflect billing practices that are substantially less rigorous than the Court is willing to accept; nearly all time billed is rounded to the nearest hour. For those reasons, the Court will, in the exercise of its discretion, deny reimbursement of attorney's fees paid to Ms. Sege.

Turning to the matter of costs, Plaintiff seeks costs in the amount of $3,131.82 for Coffield PLC. These costs appear proper and well supported. The only unaddressed objection Defendant raises pertains to Mr. Coffield's decision to stay at the Westin, a hotel across the street from the courthouse, which Defendant characterizes as "very expensive." The Court notes that many – if not most – attorneys who do not reside nearby but practice in this Court stay at the Westin. The hotel appears to have charged Mr. Coffield a discounted rate of $161.11 per night plus tax. The Court cannot say that this was so unreasonable a

17

choice of lodgings that this cost should not be taxed to Defendant. The Court therefore finds that Plaintiff is entitled to $3,131.82 in costs for Coffield PLC.

Finally, Plaintiff seeks $7,346.00 in costs for Swick & Shapiro PC. These costs likewise appear proper and well supported. The only objection Defendant raises is to the decision of Plaintiff's counsel to employ the services of a certified ASL translator for client meetings. Plaintiff represents that cost-free alternative means of communication were employed at times, but that the use of a certified ASL interpreter was sometimes necessary to establish effective client communication. The Court will not second-guess that determination. Indeed, the reasonableness of determination is supported by the jury verdict in this case. The Court will therefore award Plaintiffs costs for Swick & Shapiro PC in the amount of $7,346.00.[4]

### IV. Conclusion

For the foregoing reasons, the Court will grant Plaintiff's Motion in part and award Plaintiff $44,986.88 in fees and $3,131.82 in costs to Coffield PLC, and $46,333.08 in fees and $7,346.00 in costs to Swick & Shapiro, PC.

---

[4] The Court would be remiss not to note that some arguments advanced by Defendant's counsel appear little better than *ad hominem* attacks on Plaintiff's counsel. *See, e.g.*, Opp. [Dkt. 132] at 14. Such arguments are not helpful.

An appropriate order will issue.

|  | /s/ |
|---|---|
| January 17, 2017 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |